Mr. Justice Mac Arthur
delivered the opinion of the court:
On the 17th day of January, 1874, complainant made and delivered to the defendant, Mandel, its promissory note for the sum of $4,181.50, payable three months from that date, and at the same time delivered to said Mandel, as collateral security, several auditor’s certificates, amounting at par to $10,453.41. The complainant was a contractor, previously to this transaction, in putting down pavements in the city of Washington, and for the work so performed received from *354 the late board of public works certificates, commonly called, auditor’s certificates, in form following:
No. —-.
Office of Auditor Board Public Works,
Washington, D. Ü.
I hereby certify that I have this day audited and allowed, the account of--for-amounting to-

Auditor.

Complainant also received, in the course of business, other similar certificates, issued by the board to other persons for work done.
About the 26th of January, 1874, complainant gave defendants, Aistrop & Dudley, brokers, its promissory note for $6,428.28, payable four months after that date, and gave them other auditor’s certificates, amounting at par value to $16,070.70, as collateral security. Aistrop & Dudley were agents of the defendant Mandel and delivered the note and certificates to him. All these certificates, when delivered to Mandel or his agents, were indorsed in blank by the persons or firms to whom they were issued. Before the maturity of the notes, and while having them in his possession, Mandel assumed to transfer and sell the certificates to other persons, who are made parties to the bill in this case, without giving them notice that he held them as collateral security. They appear to have purchased them upon the faith of their being indorsed in blank. Mandel has absconded with the proceeds, and is now insolvent. The board of public works has been abolished, and the board of audit has been created by act of' Congress. It is their duty to receive auditor’s certificates, and issue their own in their place, and these latter are exchangeable for 3.65 bonds of the District of Columbia Three of the auditor’s certificates have been presented to the board of audit, as follows: No. 4780, for $2,329.14, by the-defendant John O. Mulford; No. 458, for $1,202.95, by defendant The Middleton National Bank; and No. 147, for $1,603.97, by defendant Francis H. Morgan. The prayer of the bill is that these defendants may be enjoined from converting the board of audit certificates into 3.65 bonds.
*355 There is but one other certificate iuvolved in this suit, which had been put in possession of said Mandel by the complainant. The defendant George Follansbee became the holder of auditor’s certificate No. 457, for §5,000, and which had been presented to the board of audit, who had allowed their own certificate therefor. Afterward Follansbee entered into an arrangement with the defendant Peter Campbell, who agreed to obtain 3.65 bonds for said certificate, and, on the 4th day of December, 1874, he did so; Campbell sold the bonds, paid the proceeds to Follansbee, after retaining a commission. Follansbee claims that this transaction was an absolute sale of the certificate to Campbell ; but we are satisfied by the testimony that Campbell was simply employed, as a broker, to procure the bonds and sell them upon a commission. An amicable settlement has been made of all the certificates except the four which are here referred to.
As showing the powers of the late board of public works at the time these certificates were issued, the following section of the organic act is quoted:
“Sec. 37. And be it further enacted, That there shall be in the District of Columbia a board of public works, to consist of the governor, who shall be the president of said board; four persons, to be appointed by the President of thfe United States, by and with the advice and consent of the Senate, one of whom shall be a civil engineer, and the others citizens and residents of the District, having the qualifications of an elector therein; one of said board shall be a citizen and resident of Georgetown, and one of said^ board shall be a citizen and resident of the county outside of the cities of Washington and Georgetown. They shall hold office for the term of four years, unless sooner removed by the President of the United States. The board of public works shall have entire control of and make all regulations which they shall deem necessary for keeping in repair the streets, avenues, alleys, and sewers of the city, and all other works which may be intrusted to their charge by the legislative assembly or Congress. They shall disburse upon their warrant all moneys appropriated by the United States, or the District of Columbia, or collected from property holders, in pursuance of law, for the *356 improvement of streets, avenues, alleys, and sewers, and roads and bridges, and shall assess, in such manner as shall be prescribed by law, upon the property adjoining and to be specially benefited by the improvements authorized by law and made by them, a reasonable proportion of the cost of the improvement, not exceeding one-third of such cost, which sum shall be collected as all other taxes are collected. They shall make all necessary regulations respecting the construction of private buildings in the District of Columbia, subject to the supervision of the legislative assembly. All contracts made by the said board of public works shall be in writing, and shall be signed by the parties making the same, and a copy thereof shall be filed in the office of the secretary of the. District; and said board of public works shall have no power to make contracts to bind said District to the payment of any sums of money except in pursuance of appropriations made by law, and not until such appropriations shall have been made. All contracts made by said board in which any member of said board shall be personally interested shall be void, and no payment shall be made thereon by by said District or any officers thereof. On or before the first Monday of November of each year, they shall submit to each branch of the legislative assembly a report of their transactions during the preceding year, and also furnish duplicates of the same to the governor, to be by him laid before the President of the United States for transmission to the two houses of Congress; and shall be paid the sum of two thousand five hundred dollars each annually.”
The board of audit is created by the 6th section of the act of Congress of 1874, chap. 337, which provides, among its other provisions, as follows:
' “It shall be the duty of the First Comptroller and the Second •Comptroller of the Treasury of the United States, who are hereby constituted a board of audit, to examine and audit for settlement all the unfunded or floating debt of the District of Columbia and of the board of public works hereinafter specified, namely: First, the debts evidenced by sewer-certificates ; secondly, the debt purporting to be evidenced and ascertained by certificates of the auditor of the board, of public works.” And by the 7th section it is declared that it *357 shall be the fluty of the sinking-fund commissioners to cause bonds of the District of Columbia to be prepared in sums of fifty and five hundred dollars, payable fifty years after date, bearing interest at the rate of three and sixty-five hundredths per centum per annum, payable semi-annually, and to exchange said bonds at par for like sums of any class of indebtedness in the preceding section of that act named.
The board of public works has been abolished, and the board of audit created in lieu thereof to receive auditor’s certificates and issue their own, which, by reason of the legislation just mentioned, are exchangeable for the bonds of the commissioners of the sinking-fund. The main object of the bill is to enjoin this conversion of the certificates in suit, the complainant averring his willingness to pay the amount due upon the notes, to secure which such certificates were placed in the hands of the defendant Mandel.
The defendants, who are holders of the certificates, claim that they have been transferred to them in the usual manner of business for valuable consideration, and without any notice or knowledge that complainant had any interest therein.
We have referred to the act of Congress creating the board of public works for the purpose of showing the nature and extent of its authority to bind the District by its agreement. All contracts made by the board were required to be in writing, and signed by the parties making them, and a copy was to be filed in the office of the secretary of the District, and they were in express terms deprived of the power to make contracts binding upon the district for the payment of any sums of money except in pursuance of appropriations made by law. It is, therefore, very clear that they had no such power as would authorize them to enter into contracts, which would be obligations upon the District, of a negotiable character, signed by no one but an auditor, and which could pass a legal title from hand to hand by mere delivery or indorsement. Indeed, the board of public works have never undertaken to issue bonds, or instruments of this description, through the agency of an auditor. There are no words of negotiability, such as are usual in commercial paper, contained in these certificates, and there is no reason to suppose that they were ever intended to be negotiable, or to have *358 any advantages beyond a mere statement of indebtedness, or that so much work had been performed by the party to whom they were issued. We are relieved from the inquiry which would have been pertinent had these instruments contained the operative words of transferability indispensable to all negotiable paper. They are, therefore, to be treated as mere elipses in action, and the holder must take them subject to the rights or equities of other parties.
In case the notes secured by the deposit of these certificates had not been paid at maturity, the defendant .Mandel had a right to sell them and apply the proceeds to the amount due upon the notes, and return the balance, if any thing remained, to complainant. This was the only right or interest he had, and he could transfer no other or greater interest to other parties.
We are not really presented with the question whether the board of public works were invested with authority to issue these auditor’s certificates, and to make them negotiable, and as such, unimpeachable in the hands of bona fide purchasers. It is sufficient that there has been no such exercise of pow er, and no such instruments upon which that question could arise are before us in the case at bar. The certificates were used as a mere matter of detail and administration in carrying out the multifarious duties confided to the board for the accommodation of contractors. They created no obligation on the part of the District government, further than a mere statement of work performed, without any promise to pay in money, and without any day or time of payment being fixed. They possess no attribute which can bring them within the rules which regulate negotiable securities. It was only by an act of Congress, passed subsequently, abolishing the District government, that these certificates received legislative sanction, and it was then declared that the board of audit might examine them for settlement, and issue certificates of their own in their place. But this provision cannot be so construed as to change these instruments so as to make them transferable by delivery or indorsement, and thus to make them unimpeachable in the Bands of any one who had pre-, viously purchased them. The cases cited in complainant’s brief clearly establish the principles upon which these obser *359 vations are founded, and no farther citation of authorities is deemed necessary.
The answer of one of the defendants, and the argument of counsel at the hearing, assert that these certificates are transferable by indorsement, so as to pass the legal interest to an assignee by the local custom of the city of Washington. It is a maxim of law that negotiable instruments must be payable to order or bearer. The usage proposed to be shown in this case is therefore in opposition to a clear and well-settled principle of law; and it has been many times decided that a custom cannot be allowed to have this effect. In Barnwell vs. Kellogg, 10 Wall., 383, this question was discussed at length, and the authorities reviewed ; the court there say : Whatever tends to unsettle the law, and make it different in the different communities into which the State is divided, leads to mischievous consequences, embarasses trade, is against public policy. If, therefore, on a given state of facts, the rights and liabilities of the parties to a contract are fixed by the general principles of the common law, they cannot be changed by any local custom of the place where the contract was made.” The latest expression of the Supreme Court on this subject is in Vermilye vs. Adams Express Co., 21 Wall., 146, where the justice deliveringthe opinion observes: “Bankers, brokers, and others cannot, as was attempted in this case, establish by proof of usage or custom, in dealing in such paper which, in their own interest, contravenes the established commercial law. If they have been in the habit of disregarding that law, this does not relieve them from the consequences nor establish a different law.”
The certificates are not transferable by indorsement, so as to convey a legal interest to the indorsee, and are not, therefore, within the rule which regulates negotiable instruments.
The law has established that the absolute property of these vouchers cannot be transferred, and no evidence of usage can be received to subvert this rule of law. In. Talty vs. Freedmards Trust Co., 1 MacA.,522,we decided that a voucher of the late corporation of Washington was not a commercial instrument; but where it had been indorsed by the owner, and had been used as a security to raise money, he could not maintain replevin to recover the voucher from an innocent *360 bona fide holder, without tendering the amount before suit, brought. We have no doubt that the court would be justified in regarding the fact that paper of this description is extensively used in this community to enable parties to borrow money, and would protect the holder in its possession and. control until the borrowers had refunded the amount advanced. Consequently, if the indorser comes into a court of' equity asking for the restitution of the certificate from an honest purchaser, he must make a tender or offer to return the amount he has borrowed upon the security. And that is-precisely what the complainant offers to do in the present suit.' The arrangement under which the certificates were delivered, to Mandel as collateral security cannot be affected by any alleged custom; and we cannot protect the holders further-than to require the amount borrowed to be brought into court, for their benefit.
• These views also dispose of the only remaining ground off defense, namely: that the complainant is estopped from disputing the right of the assignee after having indorsed the certificate to Mandel. It is contended that the indorsement of their name in blank evinced an intention on the part off the complainant that Mandel might pass the certificates free from all equities to a bona fide purchaser. As applicable to this question, we cite from the written opinion of Justice Wylie, who tried the case at the special term. He says:
“ To maintain the estoppel claimed in this case would be unjust to the complainant, which also must be presumed to have acted upon a knowledge of the law for its protection at the time it indorsed and delivered the certificates to be held as security for payment of its notes. It was aware that its indorsement was simply the transfer of a chose in action for a particular purpose, and that it was secure, therefore, against any fraud in the disposition of the instruments which might be attempted on the part of the pledgees of the paper.
• “ The presumption which holds every person to a knowledge of the legal effect of his own acts in the present case operates to protect the complainant, while it casts the loss upon the other party, whose negligence has been the consequence-of his own ignorance of the law.
“To sustain estoppel against the plaintiff in this case, there *361 fore, would be to postpone that party, all of whose acts were bona fide and obedient to the law, and to prefer the other party, whose acts were done either in ignorance of the law which they were bound to know, or were neglectful of its requirements.”
Concurring in these views, we hold that the prayer of the bill must be allowed, except as to the defendant Milford, who purchased after inquiries had been made of Ballard, who assured him that the certificate was all right. We think the complainant is now estopped from denying his title. The bill with regard to Milford must be dismissed. The defendant George Follansbee, should be held chargeable as the holder of certificate 457, and a decree may be prepared in conformity with these directions.